# General Agreement Of Indemnity

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
Hartford, Connecticut 06183

We the undersigned, individually or jointly with others, or on behalf of any of our successors, assigns, heirs, executors, administrators, subsidiaries, parents, affiliates, partnerships, joint ventures, co-ventures and limited liability companies, whether in existence now or formed hereafter, individually and collectively referred to as "Indemnitors" enter into this General Agreement of Indemnity "Agreement" with Travelers Casualty and Surety Company of America, its affiliated companies, successors, assigns, partners and subsidiaries whether in existence now or formed hereafter, individually and collectively referred to as "Company", witnesseth:

**WHEREAS**, in the transaction of business, certain bonds, guarantees, undertakings and/or contractual obligations, including renewals, extensions thereof hereinafter referred to as "Bonds" including bonds and undertakings for which the Company has obligations as a result of an asset purchase, acquisition or like transaction have heretofore been and may hereafter be required by, for, or on behalf of any one or more of the Indemnitors. Application has been made and will hereafter be made to execute such Bonds. In connection with the execution, delivery and/or assumption of obligations of such Bonds, the Company requires complete indemnification.

**NOW, THEREFORE**, as an inducement to the Company and in consideration of the Company's execution of one or more Bonds, delivery of one or more Bonds, refraining from canceling one or more Bonds, and/or assumption of obligations by the Company of one or more Bonds, and for other good and valuable consideration, the Indemnitors, jointly and severally agree with the Company as follows:

1. **Contract:** For purposes of this Agreement, "Contract" shall mean an agreement of the Indemnitors for which the Company executes a Bond, procures a Bond, assumed the obligations of a Bond, or has guaranteed performance.

2. **Default:** Any of the following shall constitute a Default: (a) a declaration of Contract default by the obligee or entity for whom a Contract is performed; (b) actual breach or abandonment of any Contract; (c) a breach of any provision of this Agreement; (d) failure to make payment of a properly due and owing bill in connection with any Contract; (e) the Company's good faith establishment of a reserve; (f) improper diversion of Contract funds or Indemnitors' assets to the detriment of Contract obligations; (g) Indemnitors become the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, creditor assignment or actually becomes insolvent; (h) Indemnitors die, become legally incompetent, are imprisoned, are convicted of a felony, or disappear and cannot be located; (i) any representation furnished to the Company by or on behalf of any of the Indemnitors proves to have been materially false or misleading when made.

3. **Payment of Premium:** The Indemnitors shall pay to the Company all premiums for every Bond executed and all renewals and extensions thereof, until the Company is discharged and fully released in writing from each such Bond.

4. **Indemnification and Hold Harmless:** The Indemnitors shall exonerate, indemnify and save the Company harmless from and against every claim, loss, damage, demand, liability, cost, charge, Bond premium, suit, judgment, attorney's fee, and expense which the Company incurs in consequence of having obligations in connection with such Bonds. Expense includes but is not limited to: the cost incurred by reason of making any investigation in connection herewith; the cost of procuring or attempting to procure release from liability including the defense of any action brought in connection herewith and the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors. Amounts due Company shall be payable upon demand.

5. **Claim Settlement:** The Company shall have the right, in its sole discretion, to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such Bond shall be paid, compromised, settled, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. An itemized, sworn, statement by an employee of the Company or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of Indemnitors' liability. The Company shall be entitled to immediate reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments.

6. **Collateral Security:** Indemnitors agree to pay the Company, upon demand, an amount sufficient to discharge any claim or demand made against the Company on any Bond. Indemnitors further agree to pay the Company, upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by Indemnitors. These sums may be used by the Company to pay such claim or be held by the Company as collateral security against any loss, claim, liability or unpaid premium on any Bond. The Company shall have no duty to invest, or provide interest on the deposit.

7. **Remedies:** In the event of a Default, Indemnitors assign, convey, and transfer to the Company all of their rights and interest growing in any manner out of the Contracts and assign all rights, title, and interest of all of Indemnitors' plants, tools, vehicles, machinery, hardware, software, equipment and materials, to be effective as of the date of such Contracts. In addition, in the event of a Default, the Company shall have a right in sole discretion to:

(a) Take possession of the work under any Contract and to complete said Contract, or cause, or consent, to the completion thereof;

(b) Take possession of the Indemnitors' equipment, tools, machinery, vehicles, materials, office equipment, books, records, documents, software, electronically stored information and supplies at the site of the work or elsewhere and utilize them for the completion of the work under the Contracts without payment for such use;

(c) Assert or prosecute any right or claim in the name of the Indemnitors and to settle any such right or claim as the Company sees fit;

(d) Execute in the name of the Indemnitors, any instruments deemed necessary or desirable by the Company to: (a) provide the Company with title to assets, (b) ! immediate possession of Contract funds whe' earned or unearned, (c) collect such sums as may be due Indemnitors and to endorse in the name of the Indemn..., and (d) collect on any negotiable instruments;

(e) Take possession of the Indemnitors' rights, title and interest in and to all Contracts, subcontracts let and insurance policies in connection therewith;

(f) Be subrogated to all the rights, remedies, properties, funds, securities and receivables of the Indemnitors on all Contracts or any other contract of Indemnitors and have the right to offset losses on any Contract or Bond against proceeds, funds, or property due from another Contract, Bond or other contract.

8. **Joint and Several Liability:** The obligations of the Indemnitors hereunder are joint and several. The Company is authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement shall not bar or prejudice actions against or affect the liability of the others.

9. **Decline Execution:** The Company has the right to refuse to provide any Bond, including final Bonds where the Company provided a bid Bond, without incurring any liability whatsoever to Indemnitors.

10. **Trust Fund:** All payments due, received for or on account of any Contract shall be held in trust as trust funds by Indemnitors for the benefit and payment of all obligations for which the Company as beneficiary may be liable under any Bond issued by the Company. Company may open a trust account or accounts with a bank for the deposit of the trust funds. Upon demand, Indemnitors shall deposit therein all trust funds received. Withdrawals from such trust accounts shall require the express consent of the Company.

11. **Books, Records and Credit:** Indemnitors shall furnish, and the Company shall have the right to free access, at reasonable times, to the records of the Indemnitors including but not limited to books, papers, records, documents, accounts and electronically stored information for the purpose of examining and copying them. Indemnitors expressly authorize Company access to their credit records including but not limited to access to account numbers and/or account balances from financial institutions.

12. **Attorney in Fact:** Indemnitors constitute, appoint and designate the Company as their attorney in fact with the right, but not the obligation, to exercise all rights of the Indemnitors assigned or granted to the Company and to execute and deliver any other assignments or documents deemed necessary by the Company to exercise its rights under this Agreement in the name of the Indemnitors.

13. **Security Interest:** As security, the Indemnitors hereby grant to Company a security interest in all of their equipment, machinery, vehicles, tools, and material, as well as sums due or to become due in connection with any Contract or other contract. This Agreement or a carbon, photographic, xerographic, facsimile, copy, or other reproduction of this Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of the Company in accordance with the Uniform Commercial Code and all similar statutes. This Agreement a carbon, photographic, xerographic, facsimile, copy, or other reproduction may be filed by the Company without notice to perfect the security interest granted herein. The Company may add schedules or other documents to this Agreement as necessary to perfect its rights. The security interests are effective as of the date of each Contract for that Contract and for each contract for that contract.

14. **Termination:** This is a continuing Agreement, which remains in full force and effect until terminated. The sole method available to Indemnitors to terminate their participation in this Agreement is by giving written notice sent by certified or registered mail, to the Company of the Indemnitors' intent to terminate. The termination shall take effect no earlier than 30 days after the Company receives such notice ("Termination Date"). The obligation and liability of the Indemnitors giving such notice shall be limited to Bonds furnished before the Termination Date.

15. **Other Sureties:** If the Company procures the execution of Bonds by other sureties, executes Bonds with cosureties or obtains reinsurance, the provisions of this Agreement inure to the benefit of such other surety, cosurety or reinsurer.

16. **Competence of Indemnitors:** The Indemnitors acknowledge that the execution of this Agreement and the undertaking of Indemnity was not made in reliance upon any representation concerning the financial condition, viability or responsibility, of any of the Indemnitors or the competence of Indemnitors to perform.

17. **Nature of Rights:** If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted. Assent or refusal to assent to changes in any Contract or Bond by the Company shall not affect the obligations of the Indemnitors to the Company. The Company's rights under this Agreement are in addition to all other rights of the Company however derived. The rights and remedies afforded to the Company by the terms of this Agreement can only be modified by a rider in writing to this Agreement signed by an authorized representative of the Company. If any of the Indemnitors fail to execute or improperly execute this Agreement; such failure shall not affect the obligations of Indemnitors. The failure to sign or the improper execution of a Bond shall not affect the Company's rights under this Agreement. Termination and/or limitation of any Indemnitors' obligations under this Agreement shall in no way affect the obligations of any of the other Indemnitors whose obligations have not been terminated and/or limited. Indemnitors acknowledge this Agreement can be amended via rider to add another person, entity or entities as Indemnitor(s) to this Agreement and Indemnitors waive any and all notice in connection with the addition of additional Indemnitors and further acknowledge the rights and obligations provided herein shall apply to all Indemnitors whenever made a party to the Agreement.

18. **Corporate Resolution:** The Indemnitors have a substantial, material and beneficial interest (a) in the obtaining of Bonds by any of the Indemnitors; and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Company for Bonds pursuant to this Agreement. The Indemnitors have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. The Indemnitors further acknowledge and agree that (a) the execution, delivery and performance of this Agreement by such Indemnitors, (b) the compliance with the terms and provisions hereof, and (c) the carrying out

of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter doc[illegible]ents or bylaws of such Indemnitors, or any la[illegible] [illegible]overnmental rule or regulation, or any applicable order, writ, injunction, judgmen[illegible] or decree of any court or governmental aut[illegible]ty against Indemnitors, or any other agreement binding upon Indemnitors, or constitute a Default hereunder.

Indemnitors shall include, but may not be limited to, the following entities and or individuals.

1) Shaw Construction Corporation
2) Melissa P. Paglia
3) Lucille B. Paglia
4) Anthony D. Paglia
5) Diane Paglia
6) ______

**WE HAVE READ THIS INDEMNITY AGREEMENT CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS, WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.**

**IN TESTIMONY HEREOF**, the Indemnitors have hereunto set their hands and fixed their seals this

3rd day of Dec., 2003.

**IMPORTANT:**

1. PRINT OR TYPE NAMES UNDER EACH SIGNATURE.
2. ALL PERSONAL INDEMNITORS MUST PROVIDE A RESIDENTIAL ADDRESS AND SOCIAL SECURITY NUMBER AND EACH SIGNATURE MUST BE NOTARIZED.
3. ALL CORPORATE INDEMNITORS MUST PROVIDE AN ADDRESS AND FEDERAL TAX IDENTIFICATION NUMBER. TWO SIGNATURES ARE REQUIRED; THAT OF A SECRETARY AND AN AUTHORIZED OFFICER. EACH SIGNATURE MUST BE NOTARIZED.

**If Indemnitor an Individual, sign below**

[signature]
Indemnitor – Individual (signature)

162 Dean Street, Providence, RI 02903
Address

Melissa P. Paglia
Indemnitor – Individual (print or type)

SS#

ACKNOWLEDGEMENT
STATE OF Rhode Island County of Providence

On this 3rd day of December, 2003, before me personally appeared Melissa P. Paglia of 162 Dean Street, Providence, RI 02903 known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same.

Andrea M. Massey
Notary Public (signature)

ANDREA M. MASSEY
Notary Public (print or type)

Notary Public residing at: 22 Bowen street Pawtucket RI 02861

Commission expires: 3-22-06

L. B. Paglia
Indemnitor – Individual (signature)

162 Dean Street, Providence, RI 02903
Address

Lucille B. Paglia
Indemnitor – Individual (print or type)

SS#

ACKNOWLEDGEMENT
STATE OF Rhode Island County of Providence

On this 3rd day of Dec, 2003, before me personally appeared Lucille B. Paglia of 162 Dean Street, Providence, RI 02903 known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same.

Andrea M. Massey
Notary Public (signature)

ANDREA M. MASSEY
Notary Public (print or type)

Notary Public residing at: 22 Bowen Street Pawtucket, RI 02861

Commission expires: 3-22-06

---

[signature]
Indemnitor – Individual (signature)

4 Grandview Avenue, Lincoln, RI 02865
Address

Anthony D. Paglia
Indemnitor – Individual (print or type)

SS#

ACKNOWLEDGEMENT
STATE OF Rhode Island County of

On this 3rd day of December, 2003, before me personally appeared Anthony D. Paglia of 4 Grandview Avenue, Lincoln, RI 02865 known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same.

Andrea M. Massey
Notary Public (signature)

ANDREA M. MASSEY
Notary Public (print or type)

Notary Public residing at: 22 Bowen Street Pawtucket RI 02861

Commission expires: 3-22-06

---

Diane Paglia
Indemnitor – Individual (signature)

4 Grandview Avenue, Lincoln, RI 02865
Address

Diane Paglia
Indemnitor – Individual (print or type)

SS#

ACKNOWLEDGEMENT
STATE OF Rhode Island County of

On this 3rd day of December, 2003, before me personally appeared Diane Paglia of 4 Grandview Avenue, Lincoln, RI 02865 known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same.

Andrea M. Massey
Notary Public (signature)

ANDREA M. MASSEY
Notary Public (print or type)

Notary Public residing at: 22 Bowen Street Pawtucket, RI 02861

Commission expires: 3-22-06

---

**If Indemnitor a Corporation, Limited Liability Company, Partnership, or Trust sign below:**

Instructions: All signatures must be notarized. If the company is: 1) a Corporation, the Secretary and an Authorized Officer should sign on behalf of the Corporation, 2) a Limited Liability Corporation, the Manager or Member(s) should sign on behalf of the LLC, 3) a Partnership, the Partner(s) should sign on behalf of the partnership, or 4) a Trust, all Trustees should sign. Two signatures are required for all companies except where otherwise instructed by Travelers.

**Each of the undersigned hereby affirms to the Company that he or she is a secretary or a duly authorized officer, manager or official of each of the business entities which enters into the foregoing Agreement as an Indemnitor. In such capacity the undersigned is familiar with all of the documents set forth and establishes the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions, partnership, and operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, the undersigned hereby affirms that such entity has the power and authority to enter into such Agreement and that the individual executing such Agreement on behalf of such entity is duly authorized to do so.**

Shaw Construction Corporation
Indemnitor - (Corporation, Limited Liability Company, Partnership, or Trust (circle one)

By L. B. Paglia (Seal)
(Signature of Authorized Officer)

Lucille B. Paglia, Secretary-Treasurer
(Print or Type Name and Title)

36 Hemlock Street, Providence, RI 02903
(Address)

05-0467152
(Federal Tax ID)

By [signature] (Seal)
(Signature of Authorized Officer)

Melissa P. Paglia, President
(Print or Type Name and Title)

36 Hemlock Street, Providence, RI 02903
(Address)

ACKNOWLEDGEMENT
STATE OF Rhode Island County of Providence

On this 2d day of Dec, 2003, before me personally appeared Melissa P. Paglia known or proven to me to be the President, of the (Corporation, Limited Liability Company, Partnership, or Trust (circle one); hereinafter referred to as "Entity") and Lucille B. Paglia known or proven to me to be the Secretary-Treasurer of the Entity executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Board of Directors of said Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Andrea M. Massey
Notary Public (signature)

ANDREA M. MASSEY
Notary Public (print or type)

Notary Public residing at: 22 Bowen Street Pawtucket, RI 02861

Commission expires: